UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMON ALEXANDER-HASSA WILLIS,                    Case No. 2:22-cv-00211

        Plaintiff,                              Hon.   Paul L. Maloney
                                                U.S. District Judge

  v.

ERICA HUSS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses two motions to dismiss. The first motion to dismiss was filed by Defendant Jones (ECF No. 25), and the other was filed by Defendants Chang and Westcomb (ECF No. 26).

This is a civil rights action brought by state prisoner Amon Alexander-Hass Willis pursuant to 42 U.S.C. § 1983.   Willis alleges violations of his rights under the Eighth Amendment, as well as violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).

Willis, through counsel, filed a 72-page amended complaint naming nineteen Defendants.   Those Defendants are:

1.  Marquette Branch Prison (MBP) Warden Huss,

2.  MBP Corrections Officer (CO) Cavin,

3.  MBP CO Neubecker,

4.  MBP CO Ogle,

5. Alger Corrections Facility (LMF) CO Brennan,

6. LMF CO Cobb,

7. LMF Assistant Deputy Warden (ADW) Contreras,

8. MBP ADW Pelky,

9. MBP Health Unit Manager (HUM) Scott,

10. MBP Resident Unit Manager (RUM) Erickson,

11. MBP RUM Viitala,

12. Wellpath, Inc. (Wellpath),

13. Physician's Assistant (PA) Westcomb,

14. LMF registered nurse (RN) Koski,

15. MBP RN Wright,

16. MBP Nurse Supervisor James,

17. MBP Nursing Assistant (NA) Jones,

18. Dr. Chang, and

19. the Michigan Department of Corrections (MDOC).[1]

In the motions to dismiss at issue here, three of the nineteen Defendants – NA Jones, Dr. Chang, and PA Westcomb – argue that Willis failed to allege facts that state Eighth Amendment claims against them.   Willis names Jones (and several others) in Count II (ECF No. 14, PageID.168-72); and he names Chang and Westcomb in Count V (*id.*, PageID.183-89).

---

[1]    Willis omitted Defendant Wright from the caption of his amended complaint and misidentified PA Westcomb as a physician.

As an initial matter, the undersigned notes that Plaintiff's sprawling 72-page amended complaint is not a picture of clarity.   Willis makes allegations against NA Jones in his "factual allegations" section (*see*, *e.g.*, *id.*, PageID.156, ¶ 132 (alleging, without specifying a date, that Jones forced Willis to lay in feces)), but only names her in one Count – Count II – which also lists claims against eight other Defendants. Count II asserts that Jones and others violated Willis's rights by forcing him to stay in an observation cell for five months and subjected him to verbal abuse, but provides no specific facts as to the allegations in ¶ 132.   (*See id.*, PageID.168-72 (Count II, ¶¶ 177-188).)

The undersigned respectfully recommends that the Court:

1.  deny Jones's motion to dismiss (ECF No. 25) solely with respect to Willis's claim (set forth primarily in ¶ 132) that Defendant Jones failed to assist Willis and caused him to lie in his own feces for hours on an unspecified date or dates;

2.  grant Jones's motion with respect to the remainder of Willis's claims against her;

3.  deny Dr. Chang and PA Westcomb's motion to dismiss (ECF No. 26);

4.  order Willis, within a reasonable time, to submit an amended complaint that complies with the requirements of Fed. R. Civ. P. 8.[2]

---

[2]    The parties are also advised that the Court has mandated the use of a claims table in cases involving five or more claims.   (ECF No. 28.)

If the Court adopts these recommendations, all of Willis's claims against Dr. Chang and PA Westcomb will go forward.   In addition, Willis's claim, set forth in ¶ 132 (ECF No. 14, PageID.156), that NA Jones, and others, required him to lie in his own feces will go forward.

## II.   Factual Allegations

Willis alleges that the MDOC violated his rights under the ADA and RA.   (*See* ECF No. 14, PageID.189-194 (Count VI, which alleges an ADA claim), and PageID.194-96 (misidentifying the seventh claim as Count VI, which alleges a claim under the RA).)   Willis does not allege ADA or RA claims against any other Defendant.   The remainder of his claims – Counts I to V – involve alleged violations of Willis's rights under the Eighth Amendment by the other 18 Defendants.   (ECF No. 14.)

The substance of Willis's claims are set forth in a "preliminary statement", pages 2-4 of the amended complaint; a section of general factual allegations, pages 12-38; and then additional factual allegations in the seven separate Counts, pages 38-72.

In the "preliminary statement" portion of his amended complaint, Willis alleges that on November 25, 2021, he was struck in the head by another inmate. (*Id.*, PageID.129.)   This resulted in a five-millimeter subdural hematoma, episodes of dizziness, and loss of balance.   (*Id.*)   Willis alleges that despite his requests for medical care, he was left untreated.   (*Id.*)   Willis says that, due to lack of care, he

4

had episodes of fainting that caused the hematoma to increase in size.   (*Id.*)   Willis says that he required emergency surgery on January 16, 2022.   (*Id.*)

Willis says that after his surgery, Defendants continued to ignore his serious medical condition and deprived him of care and treatment.   Willis says that Defendants failed to comply with his bottom bunk restriction after it was ordered by the treating physician at Alger Correctional Facility.   (*Id.*)   Willis says that on January 23, 2022, while he was on the top bunk, he fainted and fell to the floor striking his head.  (*Id.*, PageID.129-130.)   The injury required emergency brain surgery.  (*Id.*)   Willis says that the surgery resulted in his disability, and he now needs to use a wheelchair or walker.   (*Id.*, PageID.130.)

Willis asserts that the MDOC violated his rights under the ADA when he was placed in an observation cell in the Marquette Branch Prison for five months after his surgery.  (*Id.*)   Willis says that during this period, he was deprived of programming, services, and other privileges due to his disability.  (*Id.*)   Willis says that Defendants placed him in isolation for 24 hours per day, deprived him of health care, verbally and physically abused him, and denied him access to showers and sanitary living conditions.   (*Id.*)

The "factual allegations" portion of Willis's complaint, which begins on page 12 (*id.*, PageID.138) contains more details.   Willis alleges that after he was knocked unconscious on November 25, 2021, he was immediately taken to the hospital, where he received an MRI (Magnetic Resonance Imaging) scan of his head.   (*Id.*, PageID.139.)   He returned to the LMF upon completion of the MRI.   Willis alleges

5

that Defendant Wellpath contracted with the MDOC to provide medical treatment to inmates at LMF during the relevant time.  (*Id.*)  Willis alleges that Defendant Westcomb worked as a physician for Wellpath at LMF.  (*Id.*)  Willis alleges that Defendants Wellpath and Westcomb were deliberately indifferent to his injury by failing to order follow-up care.  (*Id.*, PageID.140.)

After Willis was released from segregation, he was assigned a top bunk in a protective custody unit.  (*Id.*)  Willis says he sent "kites" (written requests) on December 15 and 21, 2021 to health care due to experiencing light-headedness and loss of balance.  (*Id.*)  Willis was informed that he was placed on a list for a callout to be seen by a nurse.  (*Id.*)

On December 28, 2021, Willis's kidney specialist gave Willis an ultrasound and computerized tomography (CT) scan of his brain.  (*Id.*, PageID.141.)  On January 1, 2022, Willis submitted a medical kite for a bottom bunk detail because he was continuing to experience dizziness and loss of balance.  (*Id.*)  On January 4, 2022, Defendant Westcomb informed Willis that his CT scan showed a 5mm subdural hematoma on the left side of his brain.  (*Id.*)  Westcomb informed Willis that she would schedule a follow-up CT scan with a neurosurgeon.  (*Id.*)  Westcomb issued Willis a Medical Special Accommodations Notice for a bottom bunk.  (*Id.*)  Willis says that Westcomb violated prison policy by not providing him with a copy of the special accommodation notice.  (*Id.*, PageID.142.)  Willis asserts that he was not given a bottom bunk.  (*Id.*, PageID.143.)

Willis says that Defendant LMF ADW Contreras received the Special Accommodation Notice for a bottom bunk, but acted with deliberate indifference to Plaintiff's medical needs by not assigning him to a bottom bunk. (*Id.*) Willis says his condition worsened over the next ten days. (*Id.*, PageID.144.) Willis sent a kite to health care complaining that his vision was blurry, that he was confused, and that he could feel pressure in his brain. (*Id.*) Although RN Koski saw Willis on January 14, 2022, Plaintiff complains that she acted with deliberate indifference to his kite because she only told him to practice relaxation techniques and to request medical care if his condition worsened. (*Id.*)

Willis alleges that he alerted "prison staff" between January 1, 2022, and January 16, 2022, of his falls and lightheadedness, but "prison officials" never provided medical treatment despite "staff" witnessing him fall at least three times. (*Id.*)

Willis says that on January 16, 2022, he awoke in pain and with difficulty seeing. He was taken to Munising Memorial Hospital, where he received a CT scan that revealed he needed emergency surgery. (*Id.*) Willis was taken to the Marquette General Hospital for brain surgery and stayed there for three days before returning to LMF. (*Id.*)

Willis spent his first night at LMF in an observation cell. The next day, January 21, 2022, Willis returned to the general population where he was assigned a top bunk. (*Id.*) Willis says that Westcomb provided him with a copy of the special

accommodation for a bottom bunk dated January 4, 2022.  (*Id.*)  Willis says that this was first time he received a copy of the special accommodation.  (*Id.*)

Willis says that when he informed Defendant CO Cobb that he was supposed to have a bottom bunk, CO Cobb ignored him.  (*Id.*, PageID.146-147.)  Later, when CO Cobb was making rounds, Willis says that he showed CO Cobb his special accommodation for a bottom bunk, but again CO Cobb ignored him.  (*Id.*, PageID.147.)  Willis argues that CO Cobb was deliberately indifferent to his medical need for a bottom bunk.  (*Id.*)

Willis then asserts that he told CO Brennan on January 22, 2022, that he had an accommodation for a bottom bunk, but CO Brennan did nothing.  (*Id.*)  Willis argues that this shows that CO Brennan acted with deliberate indifference.  (*Id.*)

Willis says that at lunch time on January 22, he experienced dizziness and lost his balance.  (*Id.*)  COs were able to catch him before he fell and then helped him sit down and brought him food.  (*Id.*, PageID.148.)

Willis says that the next day, January 23, 2022, he lost consciousness while in his top bunk assignment and fell to the floor striking his head.  (*Id.*)  Willis was taken to Marquette General Hospital where a CT scan revealed bleeding on the right side of his brain that required immediate surgery.  (*Id.*)

After surgery, Willis lost mobility in both legs, the ability to stand without assistance, and the ability to control his bowels.  (*Id.*)  Willis says he required physical therapy and rehabilitation due to the neurological injury he sustained from his fall off the top bunk.  (*Id.*, PageID.149.)

Willis was released from the hospital and transferred to Marquette Branch Prison (MBP) on January 25, 2022.  (*Id.*)  Willis says he was placed temporarily in an observation cell because the infirmary was full.  (*Id.*)  Willis says that he required the use of a wheelchair, but his observation cell was not designed for a wheelchair.  (*Id.*, PageID.150.)

Willis says that during the five months that he remained in the observation cell, he was allowed to shower approximately 12 times and was deprived of all in person visits.  (*Id.*)  Willis complains that he could not access the commissary, use JPay, attend religious services, or go the yard, library, or law library while he was confined in the observation cell.  (*Id.*, PageID.151.)  Willis complains that he was deprived of all programming and the ability to exercise and was frequently locked in his cell for 24 hours per day.  (*Id.*)

Willis says that he kited MBP Nurse Supervisor James several times while he was in the observation cell to request a move and for "appropriate medical care." (*Id.*, PageID.152.)  Willis says that James acted with deliberate indifference to the cruel conditions of his confinement and took no action to ensure that he received appropriate medical care.  (*Id.*)  Willis says that the MDOC denied him access to the programs and the privileges that were afforded to other prisoners.  (*Id.*, PageID.152-153.)

Willis says that he was subjected to frequent verbal and physical abuse by MDOC staff.  (*Id.*, PageID.153.)  Willis alleges that when he was allowed to go to the shower on February 11, 2022, he noticed feces and fungus on the shower floor.

(*Id.*)  Willis says that when he asked for assistance to avoid stepping on the feces and fungus, but NA Jones refused to help him.  (*Id.*, PageID.154.)  Willis also alleges that Defendant CO Cavin pulled back the shower curtain, grabbed Plaintiff by the neck, and slammed him to the ground.  (*Id.*)  CO Cavin allegedly told Willis to stand up and return to his cell, but Plaintiff says that CO Cavin knew he was unable to physically comply with the order.  (*Id.*)  Willis says that Cavin handcuffed him and dragged him on his stomach out of the shower area.  (*Id.*, PageID.155.)  Willis received a misconduct ticket for disobeying a direct order and was found guilty after a hearing.  (*Id.*)

Willis alleges that Defendant CO Ogle called him names based upon his race and disability such as "crippled ni**er."  (*Id.*)

Willis says that NA Jones told Willis that he deserved his situation and the prison needed to start treating prisoners as if it was the 1800s.  (*Id.*)  Willis also says that Neubecker and Jones would regularly tell him that he smelled while refusing to give him a shower or materials to clean his cell.  (*Id.*, PageID.156.)

Willis alleges that he needed assistance to get from his bed to the cell toilet, but Defendants James, Jones, Neubecker, Ogle, and Cavin ignored his requests for assistance and forced him to lie in his own feces for hours.  (*Id.*)

Willis says that on March 3, 2022, ADW Contreras interviewed him about his fall from his top bunk.  (*Id.*, PageID.156-157.)  RUM Erickson allegedly told Willis that if he gave up his walker, he would be moved out of the observation cell.  (*Id.*)  Willis says that RUM Viitala, ADW Pelky and Health Unit Manager (HUM) Scott

10

acted with deliberate indifference to Plaintiff's medical needs by refusing to place him in an appropriate cell that could accommodate his disability.   (*Id.*, PageID.158-160.) Willis further alleges that HUM Scott refused to arrange the rehabilitation care that was recommended after his brain surgery.   (*Id.*, PageID.160.)

Willis alleges that Warden Huss responded to his grievances, was aware of his circumstances and is responsible for the overall operation of the institution.   (*Id.*, PageID.161.)   Willis says that Warden Huss failed to move him out of the observation cell, provide him with privileges, or transfer him to an appropriate facility that could accommodate his disability.   (*Id.*, PageID.162.)   Willis says that Marquette General Hospital recommended placement in a rehabilitation facility for gait and balance training, physical therapy, occupational therapy, and speech therapy.   (*Id.*)   Willis asserts that these recommendations were ignored by the MDOC and Wellpath.   (*Id.*)

Willis alleges that Dr. Chang was his assigned physician and that Chang saw him approximately 10 times while he was confined in the observation cell.   (*Id.*, PageID.163.)   Willis says that Dr. Chang failed to order physical and occupational therapy as recommended by Marquette General Hospital and failed to provide appropriate after care.   (*Id.*)

Willis alleges that on July 1, 2022, he was released from the observation cell and transferred to the Chippewa Correctional Facility.   (*Id.*, PageID.164.)

### III.    Summary of Counts

In Count I (ECF No. 14, PageID.164-68), Willis alleges that Defendants Contreras, Brennan, Koski, and Cobb, who were employed at LMF, violated his rights under the Eighth Amendment by being deliberately indifferent to his serious medical needs.   In Count II (*id.*, PageID.168-72), Willis shifted to events at MBP, alleging that Defendants Huss, Pelky, Scott, Erickson, Vittala, Ogle, James, Jones and Neubecker violated his rights under the Eighth Amendment by being deliberately indifferent to his serious medical needs.   In Count III (*id.*, PageID.172-74), Willis alleges that CO Cavin used excessive force against him by slamming him to the ground in the shower, thus violating his Eighth Amendment rights.   In Count IV (*id.*, PageID.174-82), Willis alleges that Wellpath – by its customs, policies and/or practices – encouraged, permitted, caused and allowed Defendants Westcomb and Chang to be deliberately indifferent to his serious medical needs.   In Count V (*id.*, PageID.182-89), Willis asserts that Defendants Westcomb and Chang were deliberately indifferent to his serious medical needs.   And, as noted above, Counts VI and VII are the ADA and RA claims against the MDOC.

### IV.   Motion to Dismiss Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).   Put differently, if plaintiffs

do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

### V. Eighth Amendment – deliberate indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with

contemporary standards of decency.   *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).
The Eighth Amendment is violated when a prison official is deliberately indifferent
to the serious medical needs of a prisoner.   *Id.* at 104–05; *Comstock v. McCrary*, 273
F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to
the medical needs of a prisoner, or by "prison guards in intentionally denying or
delaying access to medical care or intentionally interfering with the treatment once
prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's
serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at
104–05.

A claim for the deprivation of adequate medical care has an objective and a
subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the
objective component, the plaintiff must allege that the medical need at issue is
sufficiently serious.   *Id.*   In other words, the inmate must show that he is
incarcerated under conditions posing a substantial risk of serious harm.   *Id.*   The
objective component of the adequate medical care test is satisfied "[w]here the
seriousness of a prisoner's need[] for medical care is obvious even to a lay person."
*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v.
Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not
strictly limited to what is detectable to the eye. Even if the layman cannot see the
medical need, a condition may be obviously medically serious where a layman, if
informed of the true medical situation, would deem the need for medical attention

14

clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).   If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.   *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).   Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.   "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.   To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was

obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.    *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).    This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."    *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).    If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

16

guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).   "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"   *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).   He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

"[T]he right to adequate medical care does not encompass the right to be diagnosed correctly[.]"   *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis").

## VI.  Defendant NA Jones

Defendant NA Jones moves to dismiss the complaint against her, arguing that Willis failed to state a cause of action against her.   First, Defendant Jones argues that Willis failed to allege individual facts against her in Count II and grouped her with other Defendants improperly in that count.   The Court should consider all the allegations asserted against Defendant Jones in the amended complaint in addition to the allegations contained within Count II.

Willis identified Defendant Jones as a party in paragraph 28 of her amended complaint and indicated that he is suing her in her individual capacity.[3]   (ECF No. 14, PageID.137.)   Later, in paragraph 117 (*id.*, PageID.154), which is a part of a long list of general factual allegations (*see id.*, PageID.138-64 (¶¶ 31-163)), Willis alleged that on February 11, 2022, he asked NA Jones for help to use the shower because he did not want to step in feces and fungus, but she refused.   At some point, as alleged in paragraph 129, Defendant Jones told Willis "that he deserved to be in his situation

---

[3]      Defendant Jones's argument that Willis is suing her improperly in her official capacity or due to her supervisory authority is not well taken.   First, as stated above, Willis named Defendant Jones only in her individual capacity and he further alleges that she is a nursing assistant.   Nothing within the complaint alleges that she has any supervisory role at the prison or that she is being sued because of her supervisory role.   Jones also seems to backtrack on her supervisory argument by asserting that since Willis is alleging that she is a nursing assistance, she cannot be liable because he was under the care of medical experts, and, as a "nonmedical prison official", she is justified in believing that Willis was receiving capable care.   (ECF No. 25-1, PageID.234.)   Exactly what authority or role NA Jones had at MBP is not clearly a matter of record.   Whether her role was so minor that she did not have authority to provide treatment or care for Willis has not been factually developed in the record at this time.   Similarly, whether Jones had a health care role, or a custody role is also not a matter of record.

and that the prison needed to start treating the prisoners as if it were the 1800s." (*Id.*, PageID.155.)   Willis alleges in paragraph 130 that Defendants Neubecker and Jones would tell him that he smelled bad while depriving him of showers and materials to clean his cell.   (*Id.*, PageID.156.)   At paragraph 132, Willis alleges that Defendants James, Jones, Neubecker, Ogle, and Cavin ignored his requests for assistance and forced him to lie in his own feces for hours while waiting for someone to help him.   (*Id.*)

In Count II of his complaint, Willis alleges that Defendants Huss, Pelky, Scott, Erickson, Viitala, Ogle, James, Jones, and Neubecker acted with deliberate indifference to his medical needs by denying him occupational and speech therapy, locking him an observation cell for approximately five months, and denying him basic needs such as bathing and the use of the toilet.   (*Id.*, PageID.169 (¶ 181).)

Willis alleges one specific allegation against Defendant Jones regarding a shower.   He asserts that on February 11, 2022, he told Defendant Jones that there were feces and fungus in the shower, but she did not provide assistance.   (*See id.*, PageID.153-54 (¶¶ 114-117).)   Willis then alleges that Defendant Cavin forcefully removed him from the shower.   (*Id.*, PageID.154 (¶118-119).)   Willis does not allege that Defendant Jones was involved in his removal from the shower on February 11, 2022.   In the opinion of the undersigned, this allegation is insufficient to assert an Eighth Amendment cause of action against Defendant Jones.

The mere presence of some mold and standing water in the bathroom and shower areas does not create a condition "intolerable for prison confinement."

*Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).  Willis has not asserted extreme conditions that could rise to the level of a violation of the Eighth Amendment.  *See, Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996) (allowing a prisoner's claim that his cell was "[s]aturated with the [f]umes of [f]eces (thrown by some inmates), the smell of urine and vomit as well as other stale body odors" to proceed).

Moreover, the denial of one shower is insufficient to rise to the level of an Eighth Amendment violation.  *See Siller*, 2000 WL 145167, at *2 (6th Cir., Feb. 1, 2000); *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (deprivation of single shower does not implicate Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment).

The constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized

measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

As to Willis's allegations against Defendant Jones for denying him showers and hygiene items, he makes one specific but very vague allegation that Defendant Jones did not assist him on February 11, 2022, after he complained to her that there was mold and feces on shower floor.   (ECF No. 14, PageID.154 (¶ 117).)

Willis grouped Jones in Count II of his amended complaint with other Defendants who allegedly denied him showers and hygiene items.    In the opinion of the undersigned, Willis's factual allegation against Defendant Jones regarding the alleged denial of showers and hygiene items is insufficient to state an Eighth Amendment claim against Defendant Jones.[4]

Willis also alleges that Defendant Jones verbally harassed him by making a comment that he deserved his situation and the MDOC should start treating prisoners like they did in the 1800s, and on occasion would tell him that he smelled.[5] The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to

---

[4]    Similarly, the assertion that Willis was kept in an observation cell for 5 months does not appear to be directly attributable to NA Jones's conduct or authority.

[5]    The complaint does not indicate the alleged date these comments occurred. Willis only specifies February 11, 2022, as the date he encountered Defendant Jones.

correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). In the opinion of the undersigned, Defendant Jones's allegedly harassing statement is insufficient to support an Eighth Amendment claim.[6]

Willis does set forth one allegation in his amended complaint at paragraph 132 that states an Eighth Amendment claim against Defendant Jones. This allegation coupled with the allegations asserted in Count II of the amended complaint are sufficient to state a claim upon which relief may be granted. Willis alleges that when he asked Defendants including Defendant Jones for assistance "his requests were aways ignored and Plaintiff was forced to lie in his own feces for hours waiting for somebody to help him." (ECF No. 14, PageID.156 (¶ 132).) In the opinion of the undersigned, Willis has stated an Eighth Amendment claim against Defendant Jones based upon his allegation that she refused to help him and forced him to lie in his feces for hours. As explained, this allegation is more than a minor inconvenience,

---

[6]    Willis concedes that he is not asserting negligence or medical malpractice claims against Defendant Jones.

and states an Eighth Amendment claim.    In the opinion of the undersigned, Defendant Jones is not entitled to dismissal from this action.

To summarize with respect to Defendant Jones, the undersigned concludes that on Willis's claim that Jones, and others, forced him "to lie in his own feces for hours waiting for somebody to help him" states an Eighth Amendment claim.    The remainder of Willis's rather ambiguous claims against Jones, which are scattered through his lengthy complaint and comingled with allegations against other Defendants, fail to state a claim against her.    Accordingly, the undersigned respectfully recommends that only Willis's claim that Jones required him to lie in feces should go forward.

## VII.    Defendants Dr. Chang, M.D., and PA Westcomb

Willis alleges that Defendants Dr. Chang and PA Westcomb were his treating medical providers at the prison.    He alleges that he was experiencing symptoms of a closed head injury, including dizziness, lightheadedness, loss of balance, migraine headaches, and sudden falls.    (ECF No. 14, PageID.184-185 (¶ 222).)    Willis says that Defendants were deliberately indifferent to his medical needs by knowingly delaying and failing to treat his closed head injury, which ultimately led to his emergency surgery.    After his surgery, Willis says that Defendants acted with deliberate indifference by failing to provide recommended physical and occupational therapy and Defendant Westcomb failed to ensure that Willis was placed in a bottom bunk.    (*Id.*, PageID.187.)

24

Defendants argue that Willis's allegations assert only negligence or medical malpractice.   Defendants argue that Willis alleges that they provided some medical treatment, and the dispute is regarding the adequacy of treatment which fails to establish deliberate indifference to a serious medical need.   First, Willis has alleged conduct that when taken in the light most favorable to him, supports a claim of deliberate indifference to his medical needs.   (ECF No. 14, PageID.175 (¶ 200-202), PageID.177-181 (¶209), PageID.184-187 (¶220-222).)   Second, the record developed through discovery will ultimately determine whether the facts show that Defendants were actually deliberately indifferent, or whether there was merely a disagreement regarding the care received.   At this stage of the case, the Court cannot make that determination.

Defendant Westcomb argues that Willis alleges that she wrote him a bottom bunk accommodation which establishes that she could not have been deliberately indifferent to his need for a bottom bunk.   Defendant Westcomb argues that placement of a prisoner on a bottom bunk is a custody issue which she has no control over.   First, Willis argues that he was not assigned a bottom bunk.   Second, he alleges that Defendant Westcomb took no action to make sure that he was provided a bottom bunk.   While Defendant Westcomb argues in her brief that bunk assignments are a custody issue outside of authority (ECF No. 34, PageID.341), that is not a matter of record, and the Court cannot make that conclusion based on the

complaint alone.   In the opinion of the undersigned, Willis has stated Eighth Amendment claims against Defendants Dr. Chang and PA Westcomb.[7]

## VIII.  Recommendation

It is respectfully recommended that Court grant in part and deny in part Defendant Jones's motion to dismiss (ECF No. 25) and deny Defendant Chang and Westcomb's motion to dismiss (ECF No. 26).    Specifically, the undersigned recommends the Court:

1. deny Jones's motion to dismiss (ECF No. 25) solely with respect to Willis's claim (set forth primarily in ¶ 132) that Defendant Jones failed to assist Willis and caused him to lie in his own feces for hours on an unspecified date or dates;

2. grant Jones's motion with respect to the remainder of Willis's claims against her;

3. deny Dr. Chang and PA Westcomb's motion to dismiss (ECF No. 26); and

4. order Willis, within a reasonable time, to submit an amended complaint that complies with the requirements of Fed. R. Civ. P. 8.

If the Court adopts these recommendations, all of Willis's claims against Dr. Chang and PA Westcomb will go forward.   In addition, Willis's claim, set forth in ¶ 132 (ECF No. 14, PageID.156), that NA Jones, and others, required him to lie in his own feces will go forward.

---

[7]    The issues presented by Dr. Chang and PA Westcomb regarding the care and treatment Willis did receive are more appropriately resolved in a properly supported summary judgment motion.

NOTICE TO PARTIES:    Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    April 21, 2023                              /s/ *Maarten Vermaat*
                                                      MAARTEN VERMAAT
                                                      U.S. MAGISTRATE JUDGE