UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMON ALEXANDER-HASSA WILLIS,

    Plaintiff,

v.

ERICA HUSS, et al.,

    Defendants.
_____/

Case No. 2:22-cv-00211

Hon. Paul L. Maloney
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendants Chang and Westcomb's motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 82.)

This is a civil rights action brought by state prisoner Amon Alexander-Hassa Willis pursuant to 42 U.S.C. § 1983. Willis alleges violations of his rights under the Eighth Amendment, as well as violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).[1] The following claims remain in this case:

1. Count I (Eight Amendment, deliberate indifference) against Defendants Brennan and Cobb.

2. Count II (Eight Amendment, deliberate indifference) against Defendant Huss (limited to visitation), Jones (limited to causing Willis to lie in his own feces), Erickson, and James;

---

[1] For a full recitation of the facts and procedural history see the R&R dated October 10, 2023. (ECF No. 61.)

3. Count III (Eighth Amendment, excessive force) against Defendant Cavin;

4. Count V (Eight Amendment, deliberate indifference) against Defendant Westcomb and Chang; and

5. Counts VI and VII (ADA and RA) against Defendant MDOC.

(ECF No. 63, PageID.832 (Order Adopting Report and Recommendation).)

Defendants Dr. Chang and P.A. Westcomb move for summary judgment, arguing that Willis failed to exhaust administrative remedies against them prior to filing this lawsuit. Willis argues that he placed Dr. Chang on notice in two grievances by asserting Eighth Amendment claims due to deliberate indifference to his serious medical needs. However, a fair reading of those grievances establishes that Willis did not name Dr. Chang in a grievance, and that the grievances he submitted involved his placement within the prison and not the medical care he alleges was not provided.

P.A. Westcomb argues that Willis failed to grieve any claim asserted in his complaint against her. Willis asserted that P.A. Westcomb failed to provide him with medical care and acted with deliberate indifference to his serious medical needs. Specifically, Willis asserted that P.A. Westcomb failed to accommodate his medical needs by making sure that he was assigned a bottom bunk in the prison. Willis did assert a grievance against P.A. Westcomb concerning the failure to make sure that he was provided a bottom bunk in the prison. That grievance was exhausted, but Willis did not exhaust any other claim against P.A. Westcomb.

Accordingly, it is respectfully recommended that the Court dismiss Dr. Chang from this lawsuit. It is further recommended that the Court dismiss all claims

against P.A. Westcomb except for Willis's claim that she failed to provide him with a bottom bunk in violation of his Eighth Amendment rights.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

4

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[3], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

**IV. Analysis**

**a. Willis did not name Dr. Chang in a grievance**

Willis sued Dr. Chang for deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (ECF No. 47, PageID.520-527.) Willis alleges that Dr. Chang saw him approximately 10 times while he was confined in an observation cell, and that he failed to provide appropriate medical care including physical and occupational therapy. (*Id.*, PageID.496-497.)

Willis argues that he exhausted his administrative remedies against Dr. Chang by placing him on notice in grievances MBP 22-04-0607-03f and MBP 22-05-0744-21b. Willis argues that prison staff and Dr. Chang should have known that Dr. Chang was being grieved because he was Willis's primary health care provider.

Willis's Step I grievance in MBP 22-04-0607-03f with the response is set forth below:

> **Name (print first, last):** Amon Willis   **Number:** 897402   **Institution:** MBP   **Lock Number:** WVD   **Date of Incident:** 3-21-22   **Today's Date:** 3-28-2022
>
> **What attempt did you make to resolve this issue prior to writing this grievance? On what date?** 3-24-2022
> **If none, explain why.** I wrote/kited Ms. James, asking to be housed in an appropriate cell (Infirmary Cell) so that I may be treated humanely and provided reasonable accommodations.
>
> **State problem clearly...**
> DUE to having two Brain Surgeries on 1/16/2022 and 1/23/2022, I have been transferred from Alger Correctional Facility to Marquette Branch Prison for medical needs on 1/25/2022. I am to be housed in a Infirmary cell, on the contrary I am being housed in a Segregated observation cell Level V. I am being punished for reasons beyond my control. Prisoners shall be treated humanely and with dignity in matters of Health care, personal safety and general living conditions. This is also contrary to the goals of encouraging self-reliance and rehabilitation, as well as unfair, PER PD 03.03.130 Humane Treatment and Living Conditions for prisoners. I have not been provided with reasonable accommodations so that I may participate in Programs, Services and activities in this matter PER PD 03.04.100 and 04.06.160 Prisoners with Disabilities.
>
> **RESPONSE (Grievant Interviewed?)** ☐ Yes ☒ No (Prisoner description allowed response from record)
> Grievant's electronic medical record was reviewed, and does not show any kites received for the dates listed above. Nursing Supervisor James was interviewed and she denies receiving any kite. Ward V is the segregation area of the Infirmary. According to custody, the grievant is placed appropriately according to his classification status. All the grievant's medical needs can be met in Ward V. Grievance denied.
>
> J Carlson   4/20/2022   C Scott   4/20/22

(ECF No. 82-1, PageID.920.)

Willis's Step II and III appeals in <u>MBP 22-04-0607-03f</u> are set forth below:

11

> | Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Willis | 897402 | MBP | WVD | 3-21-22 | 5-3-22 |
>
> **STEP II — Reason for Appeal** I Kited Nursing Supervisor James through the Institutional Kite lsbn per PD 05.03.118, In understanding that this is a non-emergency request. Therefore, it will not be my evidents of an electronic medical kite CHJ-519 on record to be reviewed. Although I am in need of my walker for my medical needs per PD prisoners with disabilities 04.06.160, I am medically cleared from health services per PD 03.04.100 and should not be neglected of reasonable accomadations. Furthermore, I am classified under Administrative Segregation with no L.O.P (loss of privileges) In which I am to receive Daily opportunities for exercise & recreation per PD 04.05.120 and I also have the appropriate opportunities to Advance in IISP (Incentives In Segregation program). This is all contrary to reasonable accomodations PD 04.06.160 and Humane Treatment and Living Condition PD 03.03.130. I need to be housed apporiately.
>
> **STEP II — Response**  
> Date Received by Step II Respondent: 05-05-22
>
> PLEASE SEE ATTACHED RESPONSE
>
> Patricia Lamb, RN, BSN — *Patricia Lamb RN* — 6/13/2022  
> Date Returned to Grievant: 6/14/2022
>
> **STEP III — Reason for Appeal** I have been transferred from Alger Correctional Facility Level 4 for medical reasons, not for disphinary actions, I have not been appropriately housed since arriving at MBP on 1/25/22, I have Informed Nursing Supervisor James, R.U.M Erickson, H.U.M Charley Scott and the warden Erica Huss who all have not Amended my living conditions and provide me with reasonable accomodation Per PD Humane Treatment and Living conditions 03.03.130, Prisoners with disabilities per PD 04.06.160 and prisoner placement and transfer per PD 05.01.140. This is in violation of my 8th Amendment, 14th Amendment rights and Americans with Disabilities. Grievance not resolved per PD 03.02.130

(*Id.*, PageID.918.)

The Court addressed this grievance previously, and the parties conceded that this grievance was against Defendant James. (ECF No. 61, PageID.778-781 (R&R noting that "[t]he parties agree that grievance MBP-22-04-0607-03f (ECF No. 54-3, PageID.660-663) named Nurse Supervisor Brenda James"); ECF No. 63 (Order Adopting Report and Recommendation).) As stated in the Step I response, the MDOC addressed the grievance by referencing Defendant James. Willis never asserted this grievance against Dr. Chang, and he did not allege in his complaint that Dr. Chang was involved in his cell placement. In the opinion of the undersigned, Dr. Chang was

12

not grieved in MBP 22-04-0607-03f, and this grievance did not exhaust any claims against Dr. Chang.

Willis's Step I grievance in MBP 22-05-0744-21b is set forth below:

> procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library
>
> **Name (print first, last):** Amon Willis
> **Number:** 897402
> **Institution:** MBP
> **Lock Number:** WVD
> **Date of Incident:** 5-2-22
> **Today's Date:** 5-5-22
>
> **What attempt did you make to resolve this issue prior to writing this grievance? On what date?** 5-3-22
> **If none, explain why.** I asked Rum Erickson can I be released from the Suicidal observation cell, with understanding that I was transferred from Alger Correctional Facility to Marquette Branch Prison for 24 hour Health services on 1/25/22 due to most recent Brain Surgeries. This is "Inhumane treatment".
>
> **State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.** Rum Erickson told me that I will not be leaving out of the Suicidal Mental observation cell unless I am able to walk w/o my Walker. Although I am not Suicidal, see Mental Health services PD 04.06.183, 05.01.120, 04.06.180 and 04.06.182, I am Cleared from Health Services 03.04.100; I still require medical details and special Accomadations for most recent Brain Surgeries and deconditioning per PD 04.06.100. Rum Erickson is conciously or unconciously facilitating and orcrastrating in providing me with Inhumane treatment and Living Conditions as well as participating in discrimination against my race and disability. This is in fact cruel and unsually punishment and goes against Professionlism, Integerity and MDOC Work Rules, Procedures, and policies; esp Humane treatment and Living Conditions per PD 03.03.130 as well as Prisoners with disabilities 03.04.100
>
> **Grievant's Signature:** Amon Willis

(ECF No. 82-1, PageID.923.)

The Step I response in MBP 22-05-0744-21b concludes that Willis was placed appropriately according to "MBP QHP":

13

**COMPLAINT SUMMARY:**
Prisoner is claiming he is being treated inhumanely and should not be housed in Ward V D. He states that he is being punished due to his race and disability.

**INVESTIGATION SUMMARY:**
Prisoner's claims have been reviewed. I spoke with MBP QHP and was told that due to prisoner Willis recent health issues he is in the appropriate setting. Prisoner Willis is placed in an area of the facility that can be closely monitored by medical staff. Prisoner could provide no supporting evidance that his current placement has anything to due with race or disability. If an emergancy were to occur prisoner Willis can be taken care of immediately.

**APPLICABLE POLICY, PROCEDURE, ETC.:**
PD 05.01.140 PRISONER PLACEMENT AND TRANSFER

**DECISION SUMMARY:**
Prisoner Willis is properly placed per MBP QHP. Due to recent medical issues this is the most appropriate setting. I find no violation of policy or procedure, the grievance is denied at this step.

(*Id.*, PageID.924.)

Willis's Step II and Step III appeals in MBP 22-05-0744-21b, as well as the Step II response, are set forth below:



(*Id.*, PageID.922.)

Nothing within Willis's Step I grievance or his Step II and III appeals indicates that he was asserting this grievance against Dr. Chang. The Step I grievance response indicates that MBP QHP confirmed that Willis was properly housed. Willis now asserts that Dr. Chang was the MBP QHP. (ECF No. 86, PageID.987.) Willis failed to name Dr. Chang or the "MBP QHP" in a grievance. Willis only named Defendant Erickson in his Step I grievance and his Step II appeal. More importantly, Willis asserted that he should not have been placed in a suicidal observation cell. This grievance was not about a claim that Dr. Chang failed to provide medical care.

15

In the opinion of the undersigned, this grievance did not exhaust a claim against Dr. Chang.

It is respectfully recommended that the Court dismiss Dr. Chang from this lawsuit without prejudice due to Willis's failure to administratively exhaust a claim against him.

### b. Grievance naming Defendant P.A. Westcomb

Willis sued P.A. Westcomb for deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (ECF No. 47, PageID.520-527.) Willis states that P.A. Westcomb failed to order follow-up care (*id.*, PageID.472), failed to provide a copy of the special accommodation notice for a bottom bunk (*id.*, PageID.475), and that he was not given a bottom bunk (*id.*, PageID.476).

Willis argues that he exhausted his claims against Defendant Westcomb in grievance LMF-22-03-0214-03f. The Step I grievance in LMF-22-03-0214-03f and the Step I response are set forth below:



(ECF No. 821, PageID.928.)

The Court previously determined that this grievance exhausted some claims, including Willis's claim "involving the failure to provide him a bottom bunk as asserted . . . in count V against Defendant Westcomb." (ECF No. 61, PageID.787 (R&R); ECF No. 63 (Order Adopting Report and Recommendation).)

LMF-22-03-0214-03f names P.A. Westcomb. The Step I grievance indicates that P.A. Westcomb informed Willis on January 21, 2022, that she issued him a bottom bunk accommodation early in the month. The grievance response says that

17

custody staff was not made aware of the bottom bunk detail. P.A. Westcomb argues in her motion that this is a custody issue, not a medical issue and, therefore, that Willis could not have exhausted his claims against her. (ECF No. 82, PageID.909-910).

A fair reading of Willis's complaint is that he is alleging that P.A. Westcomb failed to place him in a bottom bunk in violation of his Eighth Amendment rights. This grievance and the response indicate that custody staff did not have knowledge of the bottom bunk detail written by P.A. Westcomb. Willis states he did not have knowledge that P.A. Westcomb wrote him a bottom bunk detail, and that at the time he filed his grievance he had not been moved to a bottom bunk.

In the opinion of the undersigned, this grievance exhausts Willis's claim that P.A. Westcomb failed to provide him with a bottom bunk detail in violation of Willis's Eighth Amendment rights. Whether this is a custody issue or a health issue – assuming that is relevant – cannot be resolved in this motion. Nevertheless, Willis did not exhaust any other claims regarding the failure to provide medical care in violation of his Eighth Amendment rights against P.A. Westcomb.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendants Chang and Westcomb's motion for summary judgment in part and deny it in part as follows:

It is recommended that the Court dismiss Dr. Chang from this lawsuit without prejudice due to Willis's failure to exhaust his administrative remedies with respect to his pending claims against Dr. Chang.

It is recommended that the Court dismiss all claims against P.A. Westcomb, except for Willis's claim that P.A. Westcomb failed to provide him with a bottom bunk to accommodate his medical needs.

If the Court accepts this recommendation the following claims remain:

1. Count I against Defendants Brennan and Cobb;

2. Count II against Defendant Huss (limited to visitation), Jones (limited to causing Willis to lie in his own feces), Erickson, and James;

3. Count III against Defendant Cavin;

4. Count V against Defendant Westcomb (limited to bottom bunk); and

5. Counts VI and VII against Defendant MDOC.


Dated:  April 10, 2024                    /s/ *Maarten Vermaat*
                                          MAARTEN VERMAAT
                                          U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).