UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMON ALEXANDER-HASSA WILLIS,

        Plaintiff,

v.

ERICA HUSS, et al.,

        Defendants.

_____/

Case No. 2:22-cv-00211

Hon.  Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Registered Nurse (RN) Ruth Jones's[1] motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies and because no genuine issue of material fact exists on Plaintiff's Eighth Amendment claim asserted against RN Jones.  (ECF No. 131.)

State prisoner Amon Alexander-Hassan Willis filed a complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights, the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).  (ECF No. 47 (Second Amended Complaint).)  Willis's remaining claims are:

1. Count I (Eighth Amendment, deliberate indifference) Defendants Brennan and Cobb;

2. Count II (Eighth Amendment, deliberate indifference) against Defendant Huss (limited to visitation), **Jones (limited to causing Plaintiff to lie in his own feces)**, Erickson and James (emphasis added);

---

[1]  We now have clarity regarding Jones's status as a nurse.  Jones is an RN and worked as a Resident Care Aid in the prison.  (ECF No. 131, PageID.1319, n. 1.)

    3. Count III (Eighth Amendment, excessive force) against Defendant Cavin;

    4. Count V (Eighth Amendment, deliberate indifference) against Defendant Westcomb (limited to bottom bunk); and

    5. Counts VI and VII (ADA and RA) against Defendant MDOC.

(ECF No. 110, PageID.1147 (Order Adopting Report and Recommendation).)

Willis's sole claim against RN Jones is that she failed to assist him, causing him to lie in his own feces, in violation of the Eighth Amendment. There are no other claims remaining against RN Jones. Willis's interrogatory answers provide clarity as to his remaining claim against RN Jones. Jones's interrogatory and Willis's response are shown below.

> 2. In your Complaint it is claimed that: "Plaintiff would ask for assistance from Defendants. JAMES, JONES, NEUBECKER, OGLE, and CAVIN, but his requests were always ignored and Plaintiff was forced to lie in his own feces for hours waiting for somebody [to] help him." Please clarify this allegation to specify [all] dates upon which RUTH JONES acted distinctly from other individuals to ignore your requests and the dates upon which each such instance occurred.
>
> ANSWER: Defendant JONES specifically denied Plaintiff assistance which caused him to lie in his own feces on two occasions. Plaintiff can only recall one of the specific dates which is February 11, 2022, the other specific date he does not recall.

(ECF No. 131-4, PageID.1463-1464.) Willis claims that RN Jones forced him to lie in his own feces on two occasions.

During his deposition, Willis described how his rights were allegedly violated by RN Jones. Willis stated that he sued RN Jones for "[u]nbecoming conduct and inhumane treatment" for allowing him to live in filth. (ECF No. 136-1, PageID.1820 (deposition of Willis).) He stated he suffered only "[m]entally" due to RN Jones's conduct. (*Id.*) When asked to specify his claim, Willis stated: "For example, not

2

providing adequate assistance – nursing assistance with – help using the toilet, cleaning the feces off my body."[2] (*Id.*, PageID.1821.)

Defendant RN Jones argues that Plaintiff failed to exhaust his administrative remedies against her and that no genuine issue of material facts exists, thus entitling her to summary judgment on Plaintiff's Eighth Amendment claim. The undersigned agrees. Thus, it is respectfully recommended that the Court grant RN Jones's motion for summary judgment and dismiss her from this lawsuit.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

2     Willis asserts that he caught a foot fungus from feces that were left on a shower floor on February 11, 2022. This assertion, however, does not appear connected with his allegations that he was forced to lie in his own feces. (ECF No. 136-1, PageID.1821.)

3     The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue. *Richards v. Perttu*, __ U.S. __, 2025 WL 1698783 (June 18, 2025).

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A

prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that

clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.*, ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.*, ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.*, ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.*, ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten

business days of the response, or if no response was received, within ten days after the response was due. *Id.*, ¶ DD. The respondent at Step II is designated by the policy. *Id.,* ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.,* ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.,* ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

**IV. Analysis**

  1. **Exhaustion**

Willis named RN Jones in one Step I grievance. Willis's Step I grievance – identified as MBP 22-02-0349-26A – states in relevant part:

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> Name (print first, last): Amon Willis
> Number: 897402
> Institution: MBP
> Lock Number: MIA
> Date of Incident: 2-11-2022
> Today's Date: 2-12-2022
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why. I could make no attempt to resolve this issue prior to writing this grievance because I did not know I would be assaulted on that day.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 2-11-2022 at or about 8:15am, I used my walker and went from cell WIA to the Infirmary shower, as I am permitted to do on that date and time. Upon entering the Infirmary shower I noticed fungis and toenail clippings on the floor and also feces on the Infirmary shower stool. I asked Medical Staff LPn. Jones if she would clean or exchange the dirty material and she would not. As I am sitting in chair getting ready to take my clothing off; at this time I am in the Infirmary shower location for about 2 minutes when officer M. Cavin aggressivly snatches the door curtain down to the floor and physically assaults me. I was not given a direct order or disobeyed any command. (Additional Pages) →
>
> Grievant's Signature: Amon Willis

(ECF No. 139-1, PageID.1912.)

Willis's grievance was denied at each step of the grievance process. (*Id.*, PageID.1909-1916.) As shown above, Willis named "Medical Staff Lpn Jones" in the grievance, claiming that she would not clean the shower before his use. This grievance does not assert that RN Jones forced him to lie in his own feces. Nor has Willis presented a grievance where he asserted that RN Jones forced him to lie in his own feces.

Willis argues that he did not have to file a grievance including the factual allegation that RN Jones forced him to lie in his own feces because grievance MBP 22-02-0349-26A was enough to place RN Jones on notice of a continuing violation of

9

Willis's rights. Willis bases his continuing violation argument on the Sixth Circuit opinion in *Morgan v. Trierweiler*, 67 F.4th 363, 326 (6th Cir. 2023). In that case, Morgan filed a grievance asserting that he was denied a religious meal on a particular date, and the Sixth Circuit found that Morgan was not required to file a grievance each time he subsequently was denied a religious meal because the subsequent denial of religious meals was a continuing violation of his rights. That is different situation than the circumstances and allegations asserted by Willis in his grievance. Willis asserted in grievance MBP 22-02-0349-26A that RN Jones refused to clean the infirmary shower upon his request. Willis never asserted in his grievance that RN Jones made him lie in his own feces.

 Simply stated, Willis's claim is different. Asserting that RN Jones failed to immediately clean a shower, on one date, is not of the same nature as asserting that RN Jones forced him to lie in his own feces. Those are unrelated claims and asserting that an individual failed to clean a shower on one occasion does not qualify as a continuing violation which allows an inmate to assert unrelated claims in his lawsuit that were never mentioned in a grievance. Rather, this is more like the Sixth Circuit opinion in *Mattox*, 851 F.3d 596, where the Court concluded that grieving a doctor about his failure to perform cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing the medication Ranexa. The issues that a plaintiff may raise in a lawsuit are limited to the specific issues mentioned in the grievance. *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002). Willis never mentioned in a grievance that RN Jones forced him to lie in his own feces. In the opinion of the

10

undersigned, Willis never properly exhausted his claim that RN Jones forced him to lie in his feces and for that reason, RN Jones is entitled to dismissal from his lawsuit without prejudice.

### 2. Eighth Amendment

Willis asserts that on two occasions, RN Jones forced him to lie in his own feces. Willis says this occurred on February 11, 2022, and on an unknown date. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting

11

*Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

12

In the opinion of the undersigned, no genuine issue of material fact exists on this claim, thus entitling RN Jones to summary judgment. Willis has presented no evidence in the record supporting his claim that RN Jones forced him to lie in his feces. As set forth above, Willis asserted an allegation in his complaint that RN Jones forced him to lie in his feces. In an interrogatory answer, he indicated that this occurred twice – on an unknown date and on February 11, 2022. In his deposition he backed away from his complaint allegation and explained that RN Jones failed to assist him in wiping feces off his body after he used the toilet. (ECF No. 136-1, PageID.1821.) "When a claimant's testimony contradicts the allegations in his complaint, [the court] will credit his later testimony. . . . A claimant may not create a triable issue of fact by saying one thing in a complaint and something else in a deposition." *Leary v. Livingston Cnty.*, 528 F.3d 438, 444 (6th Cir. 2008)

Willis's claims against RN Jones are conclusory and unsupported by fact.

Willis provided one date where he alleges[5] RN Jones forced him to lie in his own feces. That date is February 11, 2022, which is the date involving the shower incident as set forth in grievance MBP 22-02-0349-26A and the subject of an MDOC investigation (ECF No. 131-1).[6] However, Willis's claim that RN Jones forced him to lie in his own feces on February 11, 2022, is demonstrably false based upon the

---

[5]  It is unclear if Willis has now abandoned his allegation that RN Jones forced him to lie in his own feces and has now modified his claim to a new allegation that RN Jones failed to assist him in wiping himself after he used the toilet. (ECF No. 136-1, PageID.1821.)
[6]  The Correction Officers involved in the shower incident were reprimanded for their conduct in removing Willis from the shower and dragging him back to his cell. RN Jones was not involved in any wrongdoing. (ECF No. 131-1, PageID.1352.)

evidence in the record. On February 11, 2022, RN Jones took Plaintiff to the shower and informed him that he had 15 minutes (extra time) to take a shower. (ECF No. 131-1, PageID.1367.) An MDOC Investigation report describes what occurred next:

> On February 11, 2022, Prisoner Willis was removed from WVA and escorted across the hallway to the shower by Resident Care Aide (RCA) Ruth Jones. Prisoner Willis went into the shower and the shower curtain was placed over the door for privacy. Prisoner Willis began to argue with RCA Jones about the condition of the shower. RCA Jones stated in her critical participant report that prisoner Willis has been aggressive and agitated since arriving at MBP. Prisoner Willis was complaining about the condition of the shower room. Prisoner Willis stated that the room was dirty, fungus on the towel, (toe) nails on the floor, the towels were dirty and there was feces on the chair. Corrections Officer (CO) Mark Cavin stated that the shower looked normal when he entered. CO Cavin did not recall observing any finger/toenail clippings, fungus on the towels, or feces in the shower area. CO Dean LaVallie stated that nothing seemed out of the ordinary, it (shower) appeared to be normal, and that the shower looked clean. RCA Jones stated that the shower was not dirty, the towels were clean, the shower stall was clean. Yes, there was toenail clippings, but they were off to the side and not in the shower stall.
>
> RCA Jones told Prisoner Willis if he was not going to shower, he would be going back to his cell. RCA Jones stated that Prisoner Willis said he was not going back there (WVA) and started yelling for the Police/CO's. RCA Jones then yelled to CO Cavin for help because she was feeling anxious as Prisoner Willis' voice continued to raise. CO Cavin and CO LaVallie were walking to the shower. CO Cavin was the first staff member to arrive at the shower, followed by CO LaVallie. Once CO Cavin arrived, he flung aside the shower curtain that was covering the shower door opening.
>
> CO Cavin stated that when he removed the shower curtain, he observed Prisoner Willis was fully dressed and standing with his fists clenched. CO LaVallie and RCA Jones observed the same. Prisoner Willis was yelling that he was not going to leave the area, and that they were going to get the squad. CO Cavin

(ECF No. 131-1, PageID.1358.)

RN Jones did not return to Willis's cell after this incident and had no further involvement with Willis. (ECF No. 136-1, PageID.38.) Willis has made no allegation and presented no evidence that anything other than the shower incident occurred on February 11, 2022. In other words, Willis has presented no evidence or any support for his allegation that RN Jones made him lie in his own feces on February 11, 2022.

Willis has asserted that RN Jones made him lie in his own feces on another unknown date. However, this is nothing more than an unsupported allegation.

14

Allegations or conclusory evidence fail to create a genuine issue of material fact. *Reedy v. West,* 988 F.3d 907, 914 (6th Cir. 2021). As the Sixth Circuit explained, "[t]he purpose of summary judgment is to determine whether a material fact dispute exists for the jury to resolve, not to replace conclusory allegations of the complaint or answer with conclusory allegations in an affidavit, verified complaint, or deposition." *Id.* (cleaned up). In the opinion of the undersigned, Willis's conclusory assertions and unsupported allegations fail to establish a genuine issue of material facts.

Finally, Willis cannot bring a claim against RN Jones based solely on emotional damages. Absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* Admittedly, Plaintiff suffered no physical injuries due to RN Jones's conduct. (ECF No. 131-4, PageID.1820.) Consequently, Willis's claim for emotional damages is barred.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant RN Jones's motion for summary judgment and dismiss her without prejudice from this lawsuit due to Plaintiff's failure to properly exhaust his administrative remedies on his claim that RN Jones forced him to lie in his own feces. Alternatively, it is recommended that the Court dismiss RN Jones with prejudice because no genuine issue of material fact exists entitling her to summary judgment.

Dated:   June 20, 2025                                            /s/ *Maarten Vermaat*
                                                                  MAARTEN VERMAAT
                                                                  U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).