UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMON ALEXANDER-HASSA WILLIS,

Plaintiff,

v.

ERICA HUSS, et al.,

Defendants.
_____________________________/

Case No. 2:22-cv-00211

Hon. Paul L. Maloney
U.S. District Judge

**REPORT AND RECOMMENDATION**

## I. Introduction

This Report and Recommendation (R. & R.) addresses a motion for summary judgment filed by Defendants Brennan, Cobb, Huss, Erickson, and the Michigan Department of Corrections (MDOC). ECF No. 163. The R. & R. also addresses Defendant Westcomb's motion for summary judgment. ECF No. 167.[1]

This is a civil rights action brought by state prisoner Amon Alexander-Hassa Willis pursuant to 42 U.S.C. § 1983.[2] Willis alleges violations of his rights under the Eighth Amendment, as well as violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). The following claims and Defendants remain in this case:

---

1 Defendant Cavin is the only Defendant not moving for summary judgment.

2 Willis filed his initial complaint in this case in November 2022. ECF No. 1. In January 2025, the Court entered orders staying and administratively closing the case due to the Wellpath bankruptcy. ECF Nos. 145, 146. The case was reopened and the stay was lifted in May 2025. ECF No. 150.

1. Count I (Eighth Amendment, deliberate indifference) against Defendants Brennan and Cobb.

2. Count II (Eighth Amendment, deliberate indifference) against Defendants Huss (limited to visitation), Erickson, and James;

3. Count III (Eighth Amendment, excessive force) against Defendant Cavin;

4. Count V (Eighth Amendment, limited to bottom bunk) against Defendant Westcomb; and

5. Counts VI and VII (ADA and RA) against Defendant MDOC.

ECF No. 110, PageID.1147 (Order Adopting Report and Recommendation); ECF No. 153 (Order Adopting Report and Recommendation).

It is respectfully recommended that the Court grant Defendant Westcomb's motion for summary judgment and dismiss her from this lawsuit.

It is further recommended that the Court grant in part and deny in part the summary judgment motion by Defendant Brennan, Cobb, Huss, Erickson, James, and the Michigan Department of Corrections. It is recommended that the Court grant the motion in part by dismissing the claims against Defendants Huss, Erickson, James, and the Michigan Department of Corrections, and deny the motion in part by concluding that a genuine issue of material fact exists on the Eighth Amendment claim involving bottom bunk placement against Defendants Brennan and Cobb.

## II. Factual Allegations

Plaintiff's factual allegations have been previously summarized:

> Willis alleges that the MDOC violated his rights under the ADA and RA. (*See* ECF No. 14, PageID.189-194 (Count VI, which alleges an ADA claim), and PageID.194-96 (misidentifying the seventh claim as Count VI, which alleges a claim under the RA).) Willis does not allege ADA or RA claims against any other Defendant. The remainder of his claims

– Counts I to V – involve alleged violations of Willis's rights under the Eighth Amendment by the other 18 Defendants. (ECF No. 14.)

The substance of Willis's claims are set forth in a "preliminary statement", pages 2-4 of the amended complaint; a section of general factual allegations, pages 12-38; and then additional factual allegations in the seven separate Counts, pages 38-72.

In the "preliminary statement" portion of his amended complaint, Willis alleges that on November 25, 2021, he was struck in the head by another inmate. (*Id.*, PageID.129.) This resulted in a five-millimeter subdural hematoma, episodes of dizziness, and loss of balance. (*Id.*) Willis alleges that despite his requests for medical care, he was left untreated. (*Id.*) Willis says that, due to lack of care, he had episodes of fainting that caused the hematoma to increase in size. (*Id.*) Willis says that he required emergency surgery on January 16, 2022. (*Id.*)

Willis says that after his surgery, Defendants continued to ignore his serious medical condition and deprived him of care and treatment. Willis says that Defendants failed to comply with his bottom bunk restriction after it was ordered by the treating physician at Alger Correctional Facility. (*Id.*) Willis says that on January 23, 2022, while he was on the top bunk, he fainted and fell to the floor striking his head. (*Id.*, PageID.129-130.) The injury required emergency brain surgery. (*Id.*) Willis says that the surgery resulted in his disability, and he now needs to use a wheelchair or walker. (*Id.*, PageID.130.)

Willis asserts that the MDOC violated his rights under the ADA when he was placed in an observation cell in the Marquette Branch Prison for five months after his surgery. (*Id.*) Willis says that during this period, he was deprived of programming, services, and other privileges due to his disability. (*Id.*) Willis says that Defendants placed him in isolation for 24 hours per day, deprived him of health care, verbally and physically abused him, and denied him access to showers and sanitary living conditions. (*Id.*)

The "factual allegations" portion of Willis's complaint, which begins on page 12 (*id.*, PageID.138) contains more details. Willis alleges that after he was knocked unconscious on November 25, 2021, he was immediately taken to the hospital, where he received an MRI (Magnetic Resonance Imaging) scan of his head. (*Id.*, PageID.139.) He returned to the LMF upon completion of the MRI. Willis alleges that Defendant Wellpath contracted with the MDOC to provide medical treatment to inmates at LMF during the relevant time. (*Id.*) Willis alleges that

Defendant Westcomb worked as a physician for Wellpath at LMF. (*Id.*) Willis alleges that Defendants Wellpath and Westcomb were deliberately indifferent to his injury by failing to order follow-up care. (*Id.*, PageID.140.)

After Willis was released from segregation, he was assigned a top bunk in a protective custody unit. (*Id.*) Willis says he sent "kites" (written requests) on December 15 and 21, 2021 to health care due to experiencing light-headedness and loss of balance. (*Id.*) Willis was informed that he was placed on a list for a callout to be seen by a nurse. (*Id.*)

On December 28, 2021, Willis's kidney specialist gave Willis an ultrasound and computerized tomography (CT) scan of his brain. (*Id.*, PageID.141.) On January 1, 2022, Willis submitted a medical kite for a bottom bunk detail because he was continuing to experience dizziness and loss of balance. (*Id.*) On January 4, 2022, Defendant Westcomb informed Willis that his CT scan showed a 5mm subdural hematoma on the left side of his brain. (*Id.*) Westcomb informed Willis that she would schedule a follow-up CT scan with a neurosurgeon. (*Id.*) Westcomb issued Willis a Medical Special Accommodations Notice for a bottom bunk. (*Id.*) Willis says that Westcomb violated prison policy by not providing him with a copy of the special accommodation notice. (*Id.*, PageID.142.) Willis asserts that he was not given a bottom bunk. (*Id.*, PageID.143.)

Willis says that Defendant LMF ADW Contreras received the Special Accommodation Notice for a bottom bunk, but acted with deliberate indifference to Plaintiff's medical needs by not assigning him to a bottom bunk. (*Id.*) Willis says his condition worsened over the next ten days. (*Id.*, PageID.144.) Willis sent a kite to health care complaining that his vision was blurry, that he was confused, and that he could feel pressure in his brain. (*Id.*) Although RN Koski saw Willis on January 14, 2022, Plaintiff complains that she acted with deliberate indifference to his kite because she only told him to practice relaxation techniques and to request medical care if his condition worsened. (*Id.*)

Willis alleges that he alerted "prison staff" between January 1, 2022, and January 16, 2022, of his falls and lightheadedness, but "prison officials" never provided medical treatment despite "staff" witnessing him fall at least three times. (*Id.*)

Willis says that on January 16, 2022, he awoke in pain and with difficulty seeing. He was taken to Munising Memorial Hospital, where

he received a CT scan that revealed he needed emergency surgery. (*Id.*) Willis was taken to the Marquette General Hospital for brain surgery and stayed there for three days before returning to LMF. (*Id.*)

Willis spent his first night at LMF in an observation cell. The next day, January 21, 2022, Willis returned to the general population where he was assigned a top bunk. (*Id.*) Willis says that Westcomb provided him with a copy of the special accommodation for a bottom bunk dated January 4, 2022. (*Id.*) Willis says that this was first time he received a copy of the special accommodation. (*Id.*)

Willis says that when he informed Defendant CO Cobb that he was supposed to have a bottom bunk, CO Cobb ignored him. (*Id.*, PageID.146-147.) Later, when CO Cobb was making rounds, Willis says that he showed CO Cobb his special accommodation for a bottom bunk, but again CO Cobb ignored him. (*Id.*, PageID.147.) Willis argues that CO Cobb was deliberately indifferent to his medical need for a bottom bunk. (*Id.*)

Willis then asserts that he told CO Brennan on January 22, 2022, that he had an accommodation for a bottom bunk, but CO Brennan did nothing. (*Id.*) Willis argues that this shows that CO Brennan acted with deliberate indifference. (*Id.*)

Willis says that at lunch time on January 22, he experienced dizziness and lost his balance. (*Id.*) COs were able to catch him before he fell and then helped him sit down and brought him food. (*Id.*, PageID.148.)

Willis says that the next day, January 23, 2022, he lost consciousness while in his top bunk assignment and fell to the floor striking his head. (*Id.*) Willis was taken to Marquette General Hospital where a CT scan revealed bleeding on the right side of his brain that required immediate surgery. (*Id.*)

After surgery, Willis lost mobility in both legs, the ability to stand without assistance, and the ability to control his bowels. (*Id.*) Willis says he required physical therapy and rehabilitation due to the neurological injury he sustained from his fall off the top bunk. (*Id.*, PageID.149.)

Willis was released from the hospital and transferred to Marquette Branch Prison (MBP) on January 25, 2022. (*Id.*) Willis says he was placed temporarily in an observation cell because the infirmary was full.

(*Id.*) Willis says that he required the use of a wheelchair, but his observation cell was not designed for a wheelchair. (*Id.*, PageID.150.)

Willis says that during the five months that he remained in the observation cell, he was allowed to shower approximately 12 times and was deprived of all in person visits. (*Id.*) Willis complains that he could not access the commissary, use JPay, attend religious services, or go the yard, library, or law library while he was confined in the observation cell. (*Id.*, PageID.151.) Willis complains that he was deprived of all programming and the ability to exercise and was frequently locked in his cell for 24 hours per day. (*Id.*)

Willis says that he kited MBP Nurse Supervisor James several times while he was in the observation cell to request a move and for "appropriate medical care." (*Id.*, PageID.152.) Willis says that James acted with deliberate indifference to the cruel conditions of his confinement and took no action to ensure that he received appropriate medical care. (*Id.*) Willis says that the MDOC denied him access to the programs and the privileges that were afforded to other prisoners. (*Id.*, PageID.152-153.)

Willis says that he was subjected to frequent verbal and physical abuse by MDOC staff. (*Id.*, PageID.153.) Willis alleges that when he was allowed to go to the shower on February 11, 2022, he noticed feces and fungus on the shower floor. (*Id.*) Willis says that when he asked for assistance to avoid stepping on the feces and fungus, but NA Jones refused to help him. (*Id.*, PageID.154.) Willis also alleges that Defendant CO Cavin pulled back the shower curtain, grabbed Plaintiff by the neck, and slammed him to the ground. (*Id.*) CO Cavin allegedly told Willis to stand up and return to his cell, but Plaintiff says that CO Cavin knew he was unable to physically comply with the order. (*Id.*) Willis says that Cavin handcuffed him and dragged him on his stomach out of the shower area. (*Id.*, PageID.155.) Willis received a misconduct ticket for disobeying a direct order and was found guilty after a hearing. (*Id.*)

Willis alleges that Defendant CO Ogle called him names based upon his race and disability such as "crippled ni**er." (*Id.*)

Willis says that NA Jones told Willis that he deserved his situation and the prison needed to start treating prisoners as if it was the 1800s. (*Id.*) Willis also says that Neubecker and Jones would regularly tell him that he smelled while refusing to give him a shower or materials to clean his cell. (*Id.*, PageID.156.)

> Willis alleges that he needed assistance to get from his bed to the cell toilet, but Defendants James, Jones, Neubecker, Ogle, and Cavin ignored his requests for assistance and forced him to lie in his own feces for hours. (*Id.*)
>
> Willis says that on March 3, 2022, ADW Contreras interviewed him about his fall from his top bunk. (*Id.*, PageID.156-157.) RUM Erickson allegedly told Willis that if he gave up his walker, he would be moved out of the observation cell. (*Id.*) Willis says that RUM Viitala, ADW Pelky and Health Unit Manager (HUM) Scott acted with deliberate indifference to Plaintiff's medical needs by refusing to place him in an appropriate cell that could accommodate his disability. (*Id.*, PageID.158-160.) Willis further alleges that HUM Scott refused to arrange the rehabilitation care that was recommended after his brain surgery. (*Id.*, PageID.160.)
>
> Willis alleges that Warden Huss responded to his grievances, was aware of his circumstances and is responsible for the overall operation of the institution. (*Id.*, PageID.161.) Willis says that Warden Huss failed to move him out of the observation cell, provide him with privileges, or transfer him to an appropriate facility that could accommodate his disability. (*Id.*, PageID.162.) Willis says that Marquette General Hospital recommended placement in a rehabilitation facility for gait and balance training, physical therapy, occupational therapy, and speech therapy. (*Id.*) Willis asserts that these recommendations were ignored by the MDOC and Wellpath. (*Id.*)
>
> Willis alleges that Dr. Chang was his assigned physician and that Chang saw him approximately 10 times while he was confined in the observation cell. (*Id.*, PageID.163.) Willis says that Dr. Chang failed to order physical and occupational therapy as recommended by Marquette General Hospital and failed to provide appropriate after care. (*Id.*)
>
> Willis alleges that on July 1, 2022, he was released from the observation cell and transferred to the Chippewa Correctional Facility. (*Id.*, PageID.164.)

ECF No. 61, PageID.753-761.

**III. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

**IV. Analysis**

**1. ADA and RA (Counts VI and VII)**

Plaintiff asserts that the MDOC denied him an infirmary bed, a wheelchair, physical therapy, commissary access, telephone calls, in-person visits, video visits, religious programing, access to other programing, law library, and outdoor yard time, while he was housed in an MBP observation cell between January 28, 2022 (when he arrived at MBP) and July 1, 2022 (when he transferred to a new prison to better accommodate his medical needs). Willis needed 24-hour nursing care, and was

placed in an observation cell, because there were no beds available in the infirmary. From February 22, 2022 to May 19, 2022, Willis was classified to administrative segregation after he was found guilty of disobeying a direct order. ECF No. 165-22 (Security Reclassification Notice); ECF No. 165-23 (Segregation Behavior Review). After he was released from administrative segregation in May, efforts were undertaken by MBP staff to transfer Plaintiff to Chippewa Correctional Facility (URF), where he could receive "skilled rehab services." ECF No. 165-16. Finally, Willis was transferred July 1, 2022, to URF to better address his medical needs. Initially, while Willis was still in the hospital, Warden Huss indicated in an email that Willis could be housed temporally at MBP in a unit close to the infirmary to allow for closer monitoring by nursing staff. ECF No. 165-12 (January 25, 2022, email regarding Willis's placement at MBP).[3]

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[4] To state a claim under the ADA, a plaintiff must show that he is "(1)

---

[3] For some context, the infirmary consists of four rooms that are set-up with two beds, like an older hospital style room. ECF No. 165-15, PageID.3215 (James deposition); ECF No. 165-28, PageID.3324 (diagram of observation cells, Ward V, and infirmary). There are four multi-use observation cells at the end of the same hall as the infirmary. *Id.* The observation cells are individual cells containing one bed, a sink, and a toilet. *Id.* Willis was in one of the observation rooms.

[4] Similarly, § 504 of the RA provides in pertinent part:

disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities] by reason of his disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiff may show a violation under the ADA through intentional discrimination or by failure to provide a reasonable accommodation. *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024).

Where a plaintiff claims that he was not properly accommodated due to his disability, a plaintiff is not entitled to his "'preferred' accommodation; rather, an accommodation suffices if it provides the plaintiff 'meaningful access' to the covered entity's programs or services." *Id.* at 821. Moreover, a delay in receiving an

---

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

accommodation to a program or service that is not attributable to intentional obstruction or bad faith, but a matter of internal processing outside an entity's control is not actionable under the ADA. *Id.* at 822.

Plaintiff provides no evidence that he was intentionally discriminated against. Plaintiff bases his ADA and RA claims in part on the treatment and care that he received while in prison. "[W]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say. . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). The ADA is not an appropriate federal cause of action to challenge the sufficiency of a prison's medical treatment because "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *see, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice.")

Here, Plaintiff was placed in the observation unit to address his medical condition and to provide him with access to 24-hour nursing care. Therefore, to the extent that Plaintiff is alleging that he was denied appropriate medical treatment, such as placement in the infirmary, access to physical therapy, or a wheelchair (despite having a walker), his claims fail. Moreover, there exists no evidence to support a claim that any Defendant discriminated against Plaintiff due to his disability by placing him in an observation cell, providing daily access to a walker but

not daily access to a wheelchair, or by giving him less physical therapy or activity than he wanted.

Plaintiff's claims that he was denied access to the law library, religious services, cleaning supplies or sanitary living conditions, regular showers, access to the cafeteria, commissary, yard time, educational opportunities, exercise, and telephone access similarly fail under the ADA and RA. First, Plaintiff was placed in the observation cell at MBP so that his medical needs could be better addressed while he was recovering from his most recent surgery. Willis testified that in his observation cell, he was able to do a limited amount of exercises such as push-ups, squats, leg lifts, and walking back and forth using the cell walls for support. ECF No. 165-3, PageID.3058 (Willis deposition). Plaintiff always had access to a walker and had access to a wheelchair as needed. *Id.*, PageID.3043. Defendants have presented a copy of the telephone calls made by Willis while he was at MBP. ECF No. 164-24. Willis made over 900 telephone calls. *Id.* His claim that he was denied telephone access is false.

Around June 22, 2022, Willis asked to use the law library. ECF No. 165-25. The librarian responded by informing Willis that the law library was closed due to "an outbreak status of COVID-19." *Id.*, PageID.3309. Plaintiff was informed that he may request law library materials and that they would be delivered to him on Tuesdays and Fridays. *Id.* There is no indication that Plaintiff made any other written request for law library materials. Nor has Plaintiff set forth any allegations showing that he was denied any law library materials due to discrimination.

Although Willis alleged that he was denied cleaning materials and that his cell was unsanitary, he presented no evidence to support his claim. Similarly, with respect to Willis's claim that he was denied showers, nurse James testified generally that general population prisoners in the infirmary, such as Willis during the time his status was general population, are given the opportunity to shower three times per week. ECF No. 165-15, PageID.3217 (James deposition). Although, it is likely that Willis may have had less opportunity for showers while he was on administrative segregation status after he was found guilty of violating a direct order, there is no evidence that he was denied showers at MBP.

Willis's claim that he was denied access to religious services is equally unsupported by evidence. First, Willis has failed to show that he made a request to attend group religious services. Willis never declared a religious preference while at MBP, and he had indicated no religious preference as of April 29, 2021. ECF No. 165-27. Willis changed his no preference designation by selecting Muslim as his religious preference effective December 9, 2022, well after he was transferred from MBP. Again, Willis provided no evidence that he was denied religious services.

Willis claims that he was denied access to the cafeteria, but he has no evidence that this was due to discrimination. Rather, all Level V prisoners at MBP, not just Willis, received their meals in their cells. ECF No. 165-3, PageID.3071. Similarly, Willis cannot show that he was denied commissary access due to discrimination. Prisoners in observation and at higher security levels have more limited access to the prison store than other prisoners. ECF No. 165-5, PageID.3126 (Huss deposition).

Willis stayed longer in observation, so he was eventually given an accommodation for more access to the prison store. *Id.* Willis has presented no evidence that he was discriminated against.

Willis alleges that he was denied yard time, but he presented no evidence that he requested and was denied yard time while he was recovering from his surgery. Generally, patients in the infirmary are discouraged from going into the prison yard due to safety concerns. ECF No. 165-15, PageID.3227 (James deposition). Plaintiff testified that he was told by Defendant Erickson that he could go to yard. ECF No. 165-3, PageID.3071 (Willis deposition). Plaintiff says he was told that a chair could be placed outside for him to sit on. *Id.* He says that never happened. *Id.* Although Willis says that he never went to the yard, he presents no evidence that he was denied yard time due to his disability. Similarly, Willis has failed to show that he was denied educational classes or other programing while he was housed in observation at MBP. For these reasons, it is recommended that the Court dismiss Plaintiff's ADA and RA claims and dismiss the MDOC from this lawsuit.

**2. Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involve the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Where a Plaintiff alleges that he was deprived of adequate medical care he must establish both the objective and a subjective component of an Eighth

Amendment claim. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *Phillips v. Roane Cnty.*, 534 F.3d 531, 539-40 (6th Cir. 2008). Where a prisoner challenges their treatment as inadequate, a prisoner must show more than a serious medical need. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). To establish the objective component in a situation where a prisoner asserts that the care received was inadequate, a prisoner must prove grossly inadequate care which generally requires the introduction of medical evidence typically in the form of expert testimony. *Id.*

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence .

. . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

The subjective component was summarized in *Rhinehart*. There, the court of appeals stated the following:

> [T]he plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

**a. Defendant Huss – Visitation (Count II)**

Plaintiff alleges that Defendant Huss denied him visitation privileges while he was confined in the MBP observation cell. The general rule is that the temporary denial of visitation privileges does not violate the Eighth Amendment:

> The United States Supreme Court has previously found that a two-year ban on visitation following an inmate's misconduct conviction for substance abuse did not violate the Eighth Amendment. *See Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003) (noting that the "restriction undoubtedly makes the prisoner's confinement more difficult to bear"

> but "d[id] not, in the circumstances of th[at] case, fall below the standards mandated by the Eighth Amendment."). Likewise, various courts have concluded that a temporary revocation of visitation privileges does not violate the Eighth Amendment. *See, e.g.*, *Cordero v. Warren*, 612 F. App'x 650, 654 (3d Cir. 2015) (six-month failure to reinstate visitation with inmate's brother, followed by non-contact visits only, did not violate the Eighth Amendment); *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012) (temporary suspension of inmate's wife's visitation did not violate the Eighth Amendment); *Barasky v. Shoemaker*, No. 1:20-CV-2457, 2021 WL 2255002, at *5 (M.D. Pa. June 3, 2021) (temporary visitation ban of unknown length did not violate Eighth Amendment); *Azzara v. Scism*, No. 4:CV-11-1075, 2012 WL 722342, at *7 (M.D. Pa. Mar. 1, 2012) (two-year temporary loss of visitation and telephone privileges did not violate the Eighth Amendment); *Cavin v. Heyns*, No. 1:11-cv-1370, 2012 WL 366729, at *5 (W.D. Mich. Feb. 2, 2012) (concluding that a two-year ban on visitation did not violate the Eighth Amendment).

*Roche v. Morrison*, No. 1:25-CV-312, 2025 WL 1361887, at *5 (W.D. Mich. May 12, 2025). Here, Plaintiff cannot establish that Defendant Huss violated his Eighth Amendment rights. Willis testified that on May 30, 2022, after he asked Defendant Huss if he could get prison visits, Defendant Huss took action to allow him to have video visits during his remaining time at MBP. ECF No. 165-3, PageID.3067. In the opinion of the undersigned, there exists no genuine issue of material fact and Defendant Huss is entitled to dismissal from this lawsuit.

**b. Defendants Erickson and James (Count II)**

Plaintiff alleges that Defendants Erickson and James acted with deliberate indifference by denying him occupational and speech therapy and refusing to assist him with his most basic needs while he was confined at MBP. Plaintiff also alleges that Defendant James denied his requests for a transfer out of the observation cell and for appropriate medical care. ECF No. 14, PageID.169-171.

After his surgery, Willis was discharged from the hospital on January 25, 2022, in stable condition, with the ability "to perform activities of daily living. . . and independently" ambulate with minimal assistance. ECF No. 165-2, PageID.2990. First, Willis was placed in an observation cell near the infirmary cells so that he could receive 24-nursing care. Contrary to Willis's assertions, there is nothing about his placement in the observation cell during his relatively short stay at MBP that violated his Eighth Amendment rights. Nor has Plaintiff presented facts that could show that Defendants James or Erickson had any control over where he was housed at MBP. *See* internal emails ECF No. 165-11, PageID,3181, 3182 ("[A]ccording to the hospital he doesn't need the infirmary and is independent, so we just need to move him where we have 24 hour nursing" and MBP "is only place in the UP with 24 hour nursing.") Plaintiff was placed in an observation cell so that he could receive medical care. Medical records show that he received continuous medical care while he was housed in the MBP observation cell from his medical team consisting of Dr. Chang, multiple nurses, physician assistants, and other members of the medical staff. ECF No. 165-2.[5]

Further, Willis blames James for not providing him with physical therapy, facilitating outside therapy, moving him to a new prison, or assisting with in-cell exercises. ECF No. 171, PageID.4272. First, the medical records reflect that as of

---

[5] Medical records indicate that Willis wanted a transfer "to the medically frail unit" but if he was not accepted, that he wanted to stay in observation or the infirmary due to gang members in the general housing unit. ECF No. 165-2, PageID.2771.

April 22, 2022, Willis was "using the walker less and doing the pt exercises as directed." ECF No. 165-2, PageID.2768. Other medical records show that Willis was receiving physical or occupational therapy when he was able to during his recovery and that he was doing well, or that he was able to perform some exercise. *Id.*, PageID.2771, 2775, 2780, 2789, 2792, 2857, 2864, 2883, 2884, 2885, 2896.

James worked as a nursing supervisor and did not provide individual patient care. ECF No. 165-5, PageID.3225. Contrary to Willis's claims, he received extensive care and treatment while he was confined in the MBP observation cell from late January thru June of 2022. There is no evidence that Defendant James failed to provide Willis with any necessary care or that she took any action in deliberate indifference to Willis's serious medical issues. Rather, there exists no genuine issue of fact on Plaintiff's Eighth Amendment claims against Defendant James, entitling Defendant James to summary judgment.

Similarly, Plaintiff has failed to show that Defendant Erickson acted with deliberate indifference to his serious medical needs. Willis argues that as the Resident Unit Manager Defendant Erickson knew that he was in the MBP observation cell during his recovery from his January 2022 surgery for more than five months and did nothing to have him moved. As stated, Plaintiff was placed in the MBP observation cell so that he could receive 24-hour nursing care. While there, Willis received fairly extensive medical care from his medical team. Defendant Erickson did not violate Plaintiff's Eighth Amendment rights, and Plaintiff has failed to present any evidence that could establish that Defendant Erickson was

deliberately indifferent to his medical needs. At best, Willis alleges that Erickson told him that he could not be moved to general population unless he gave up his walker. Erickson addressed this claim during her deposition by stating that as far as she can recall, medical staff told her that if Willis was using a walker, he was unstable on his feet, making him not medically cleared to move. ECF No. 165-19, PageID.3258. Whether Willis could move out of the observation cell to another unit was a matter for medical staff to decide. *Id.* Again, Willis was housed in the observation cell so that he could have 24-hour nursing care, and the observation cells or the infirmary cells, which were in the same location, were the only option for Willis while he was housed at MBP. In the opinion of the undersigned, there exists no genuine issue of fact on Plaintiff's Eighth Amendment claims against Defendant Erickson, entitling Defendant Erickson to summary judgment.

**c. Bottom Bunk assignment – Westcomb (Count V)**

Willis alleges that Defendant Westcomb violated his rights by failing to ensure that he received a bottom bunk due to his post-surgical medical condition. Defendant Westcomb saw Willis on January 4, 2022, and on that date she placed Plaintiff on a bottom bunk restriction by filling out a Medical Detail Special Accommodation Notice. ECF No. 170-4. Willis says that Westcomb did not tell him that she issued the bottom bunk accommodation, nor did she provide him with a copy of the medical detail. Willis says that he still was assigned a top bunk and that Westcomb made no effort to follow through with the accommodation to ensure that Willis received a bottom bunk assignment. *Id.*, PageID.4046. Willis says that he

first learned of the bottom bunk accommodation during his medical visit with Westcomb on January 21, 2022. *Id.*, PageID.4048. After speaking with Westcomb that day, he learned that she issued the medical detail on January 4, 2022. *Id.*

Westcomb first argues that Willis failed to satisfy the objective component of an Eighth Amendment claim by submitting verified medical evidence into the record to establish the detrimental effect of the delay in medical treatment. The obvious problem with Westcomb's argument is that she recognized his need for a bottom bunk and issued a medical accommodation for Willis to have a bottom bunk. Her assertion that she did not believe there was an immediate need for a bottom bunk is insufficient, in the opinion of the undersigned, to show no issue of material fact as to the objective prong, thus entitling her to summary judgment. Such an argument contradicts her own actions in issuing the medical detail in the first place. Westcomb issued the medical detail for a bottom bunk on January 4, 2022, with an expiration date of July 4, 2022. ECF 170-4. There exits nothing on the medical detail that reflects that it was not effective on the date it was issued. *Id.*

However, a review of the record with respect to the subjective component establishes that there exists no genuine issue of material fact on that component, and that Defendant Westcomb did not act with deliberate indifference toward Willis's serious medical needs. Westcomb gave Willis a bottom bunk detail because he was experiencing dizziness and was concerned that he could fall coming down the ladder from the top bunk. ECF No. 170-11, PageID.4189. Once the medical detail was issued, it was entered into the OMNI system the same day, which should have

notified MDOC personnel and correction officers that Willis needed a bottom bunk assignment. ECF No. 167-2, PageID.3383, 3393.

Plaintiff says that on January 21, 2022, Westcomb handed him the bottom bunk detail. ECF No. 165-3, PageID.3022. Therefore, it is undisputed that Willis was aware of the bottom bunk detail issued by Westcomb two days before he fell in his cell. Further, it is undisputed that Westcomb issued the medical detail for a bottom bunk accommodation on January 4, 2022. Accordingly, it is the opinion of the undersigned that Westcomb did not act in deliberate indifference to Plaintiff's medical needs. At most, Plaintiff has asserted factual allegations that may arguably show that Westcomb could have been negligent by failing to make sure that the bottom bunk detail was received by custody staff. That, however, is not enough to establish deliberate indifference. Westcomb issued Willis a medical detail, which was entered into the MDOC system to make custody staff aware of the accommodation. Willis further alleges that he was aware of the bottom bunk medical detail before his January 23, 2022, fall in his cell, and that he told at least two correction officers that he had a bottom bunk detail. Under these circumstances, it is the opinion of the undersigned that there exists no genuine issue of material fact and Defendant Westcomb is entitled to summary judgment.

**d. Bottom Bunk assignment – Brennan and Cobb (Count I)**

Defendants Brennan and Cobb argue that they are entitled to dismissal of Plaintiff's Eighth Amendment claims based upon qualified immunity because no clearly established law supports Plaintiff's claim. "Under the doctrine of qualified

immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court

considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'"

*Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

Both Defendants Brennan and Cobb argue that they did not act with deliberate indifference because they were unaware of Willis's medical accommodation for a bottom bunk and unaware that he had a medical complication during their interactions with Willis. Further, Defendants argue that they did not violate clearly established law. Willis testified that when he informed both Brennan and Cobb that he was given a bottom bunk detail due to his surgeries, they both stated that they would check into it. ECF No. 171-1, PageID.4327-3328.

In *Comstock v. McCrary*, 273 F.3d. 693, 702 (6th Cir. 2001), the Sixth Circuit stated "we have long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such prisoner." *See Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir. 1989) ("If a prisoner asks for and needs medical care, it must be supplied"); *Tyree v. Howard*, No. 2:23-CV-10168, 2025 WL 1069822, at *5 (E.D. Mich. Feb. 7, 2025), *report and recommendation adopted sub nom. Tyree v. Jindale*, No. 23-CV-10168, 2025 WL 942836 (E.D. Mich. Mar. 28, 2025) (failing to check whether a prisoner had a bottom bunk detail violates clearly

established law that a prisoner's serious medical needs may not be disregarded). Further, a corrections officer who knowingly fails to place the prisoner at risk "in a bottom bunk could amount to deliberate indifference in an Eighth Amendment sense." *Haydon v. Pace*, No. 2:25-CV-37, 2025 WL 1427625, at *5 (W.D. Mich. May 19, 2025).

Here, Willis says that he told both Brennan and Cobb that he had a medical detail for a bottom bunk due to his recent surgeries. Defendants deny that Willis told him that he had a bottom bunk detail or that they were aware of Willis's medical condition. Defendant Cobb says that he was not working on either January 21 or January 23, and therefore it was impossible for Willis to have spoken with him. ECF No. 173, PageID.4785 (corrected reply brief). However, in the opinion of the undersigned, Willis testified that he placed Brennan and Cobb on notice that he had a bottom bunk accommodation due to his recent surgeries. Willis says that Defendants ignored the risk by failing to take any further action despite being placed on notice that Willis was supposed to be in a bottom bunk. In the opinion of the undersigned, a question of fact exists as to whether Defendants Brennan and Cobb were placed on notice that Willis needed a bottom bunk and whether they ignored the risk by placing Plaintiff in a top bunk instead. Deputy Warden Contrera succinctly framed the issue for the jury in his deposition testimony:

> I'm definitely not saying we did everything right and -- but I do think it's part of his responsibility to bring it up to staff but he says he did, staff deny that they -- that he did. They claim that if he would have said he had any need to be placed in the lower bunk, they would have no issue doing it. So part of it I -- I do believe that it is -- it was his

> responsibility but do I think staff -- that we should ensure that he was there, yes.

ECF No. 167-7, PageID.3942. In the opinion of the undesigned, a genuine of issue of material fact exists whether Defendant Brennan or Cobb's inactions rose to deliberate indifference. That is an issue that is appropriate for the finder of fact and not an issue that should be decided on summary judgment.

**V. Recommendation**

It is respectfully recommended that the Court grant Defendant Westcomb's motion for summary judgment and dismiss her from this lawsuit.

It is further recommended that the Court grant in part and deny in part th the motion for summary judgment filed by Defendant Brennan, Cobb, Huss, Erickson, James, and Michigan Department of Corrections. It is recommended that the Court grant the motion in part by dismissing the claims against Defendants Huss, Erickson, James, and Michigan Department of Corrections, and deny the motion in part by concluding a genuine issue of material fact exists on the Eighth Amendment claim involving bottom bunk placement against Defendants Brennan and Cobb.

If the Court accepts this recommendation, the remaining claims will be:

1. Count I (Eighth Amendment, bottom bunk placement) against Defendants Brennan and Cobb; and
2. Count III (Eighth Amendment, excessive force) against Defendant Cavin.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C);

Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 7, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE